UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 4:08-cr-18 |
| v. | ) | |
| | ) | |
| BRANDON K. WRIGHT | ) | *Mattice / Lee* |


## REPORT AND RECOMMENDATION


### I.    INTRODUCTION

Before the Court is Defendant Brandon K. Wright's motion to suppress all evidence seized

as a result of the seizure and search of his laptop computer [Doc. 17].  The motion was referred for

a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) [Doc. 83].  The parties

have briefed their respective positions extensively [Doc.18, 22, 23, 51, 85, 86, 89, 90], and an

evidentiary hearing was held on January 6, 2010.  After careful review and consideration, I find no

constitutional violation with respect to the seizure or search of Defendant's computer, and I

**RECOMMEND** that Defendant's motion to suppress evidence be **DENIED**.

### II.    BACKGROUND

#### A.    Evidence Adduced at the Evidentiary Hearing

At the hearing, the Government offered the testimony of Detective Charles Wells ("Wells"),

the sole witness to testify.  The following summary reflects the testimony of Wells and information

gained from a review of the exhibits introduced during the hearing.

Wells, an officer with the Chattanooga Police Department ("CPD"), testified that in January, 2008, his division purchased new "screen capture" computer software designed to record online activities so they could begin investigating computer-based enticement, child-sex, and child-pornography crimes. During one of his first uses of the software, Wells entered a Tennessee "chat room" and sat idle, waiting to see if anyone would contact him. Wells had created a false profile so that other chat room users would believe he was a 14 year-old girl named Ginger Bradley ("Ginger"). Wells, in his role as Ginger, was contacted by another chat room user known as "captin_ping141," who was later identified as Defendant.

Defendant and Ginger developed a "friendship" through their computer communications ("chats") which, over the course of the next two months, became more sexual.[1] As reflected in the transcripts of the computer chats and Wells' testimony, as the computer chats progressed, Defendant sent nude pictures of himself to Ginger and expressed interest in engaging in various sex acts with Ginger, including anal and vaginal intercourse and oral sex. Defendant also expressed interest in viewing nude pictures of Ginger, requesting that Ginger send him "pictures" because he wanted to "see [her] breasts." On another occasion, Defendant asked Ginger, "will you let me take pictures of you..us?" and Ginger responded by offering to "have some pics for [him]" when they met. Ginger later told Defendant that she had a disk with pictures she would give him when they met.

During the course of their computer chats, Defendant told Ginger he had a laptop computer with a webcam, which he used during their chats. He also confirmed that the laptop was his only

---

[1] Transcripts of three such chats were entered into evidence as Government Exhibits 1, 6, & 7.

computer. Ginger asked Defendant whether he would bring the laptop with him when they met, and Defendant replied that he did not know. Ginger then explained to Defendant that she wanted him to bring his laptop so that she could show him the disk containing pictures of her.

Defendant and Ginger arranged to rendezvous on March 5, 2008, at the Rustic Villas Apartments in Chattanooga, where Ginger claimed to live. During their computer chats, Ginger offered to give Defendant directions, but Defendant told her that he would use his global positioning system ("GPS") device to find her address. Ginger asked Defendant to bring a particular shirt that he was wearing during one of their chats so that she could "sleep in it." Defendant replied that he would.[2]

On the day of the planned rendezvous, Wells and approximately seven other officers were in place to make an arrest in the parking lot of the Rustic Villas Apartments if Defendant arrived as arranged with Ginger. When Defendant arrived, Wells, posing as a resident repairing his truck, positively identified Defendant from a picture that Defendant had sent Ginger. Defendant was immediately arrested.[3] Contemporaneously with the arrest, several officers opened the trunk and passenger compartment of Defendant's vehicle in what Wells characterized as an inventory search. Approximately three minutes after Defendant was ordered out of his vehicle and as he was being placed into the backseat of a patrol car in handcuffs, Defendant's trunk, where his laptop computer was found, was opened.

---

[2] Government's Exhibit 7, page 4. While a black/white rugby shirt is listed on the seized evidence report, and assorted clothing is listed on the tow-in liability release form, no testimony was presented at the hearing regarding a shirt.

[3] Defendant does not contest that there was probable cause for the arrest. A DVD of the arrest was entered into evidence as Defendant's Exhibit 2.

Wells testified that he was aware from the computer chats that Defendant had driven to Chattanooga from Murfreesboro, Tennessee. Consequently, Wells testified, Defendant's vehicle was impounded pursuant to Defendant's arrest because Defendant "resided out of town." According to Wells, a vehicle inventory search upon arrest is consistent with CPD policy.[4] Wells explained that officers learn during field training that vehicles belonging to out-of-town arrestees are more likely to be broken into than those belonging to local residents. Officers therefore may decide not to impound a vehicle owned by a local resident so long as the vehicle can be left locked and someone else is able to retrieve it within a reasonable time. Vehicles belonging to non-local arrestees, however, are impounded. Wells also testified that under CPD policy, it does not matter

---

[4] The portion of the CPD Policy Manual ("Manual") governing inventories and searches of automobiles was entered into evidence as Government Exhibit 2. The Manual provides, in pertinent part:

> An [officer] may conduct a motor vehicle inventory . . . when . . . the vehicle has been lawfully seized or impounded pursuant to the arrest of the driver . . . and . . . officers conduct the inventory within the scope of this policy as an administrative procedure. . . . Examination of the contents of a motor vehicle pursuant to a criminal investigation or with the intent of discovering evidence of a crime is a search, not an inventory.
> . . .
> An inventory should be conducted at the location where the vehicle is seized unless limited by reasons of safety or practicality.
> . . .
> A motor vehicle inventory may extend to all areas of the vehicle in which personal property or hazardous materials may be found, including but not limited to the passenger compartment, trunk, and glove compartment.
> . . .
> All items of value shall be itemized on the department's property inventory form and such materials turned over by the investigating officer to the control of the property room for safekeeping.
> . . .
> The investigating officer shall deposit contraband and evidence discovered during the course of a motor vehicle inventory with the property unit in accordance with procedures for control of criminal evidence.

4

whether the trunk or passenger compartment of a vehicle is inventoried first because all areas that might contain personal property may be inventoried.

Under the "Inventory" heading on the "Vehicle Tow-In Report" completed in conjunction with Defendant's arrest,[5] neither Defendant's laptop nor his GPS device is listed. Instead, those items appear on the separate "Property / Evidence Submittal & Chain of Custody" form.[6] Wells explained that personal property without evidentiary value is inventoried on the tow-in report, while evidence is listed separately on the property/evidence form. He also testified that the laptop was considered evidence because he believed it was corroborative of Defendant's intent in meeting Ginger--namely, to view nude pictures of Ginger. Wells also testified that although Defendant had never specifically stated he would bring his laptop, Wells expected to find the laptop in Defendant's vehicle because Defendant had at least twice previously expressed an interest in viewing (impliedly nude) pictures of Ginger and because Ginger had offered to give him such pictures to view on his laptop.

Defendant was not questioned at the scene of the arrest, but was taken to the police station where he was read his *Miranda* rights and interviewed. The transcript of the interview[7] reveals that Wells and his partner wanted to search the contents of Defendant's computer not only for evidence related to his communications and intentions with Ginger, but also for child pornography. When Defendant was asked whether the laptop would contain child pornography during his custodial interrogation, Defendant admitted he used his laptop to view legal pornography of adults from the

---

[5] This form was admitted as Government's Exhibit 3.

[6] This form was admitted as Government's Exhibit 4.

[7] The transcript was submitted as an attachment to Defendant's brief [Doc. 86-1], and the Government did not contest the accuracy of the transcript during the hearing.

website "Casting Couch Teens," but denied viewing any child pornography. Defendant was asked for his consent to search the laptop, but he refused. The officers informed Defendant they were going to look in his computer either with a search warrant or with consent to search. When Defendant refused to consent, the computer was stored as evidence by the CPD. Defendant was charged with solicitation of a minor by electronic means[8] and later released on bond.

Although Defendant was arrested and his laptop computer seized on March 5, 2008, a search warrant was not obtained for a search of the contents of the computer until April 2, 2008. Wells testified he did not seek a warrant sooner because this was his first computer case and CPD personnel were not able to perform a forensic analysis of the laptop. Wells' testimony did not, however, explain whether anyone at the CPD was able to *apply* for the search warrant without outside assistance. To obtain assistance with the search of Defendant's computer, Wells initially requested assistance from the Knoxville Police Department ("KPD"). The KPD could not timely assist him, so Wells contacted the Cleveland Police Department ("CLPD") for assistance. When he learned the CLPD could not timely assist him, Wells approached Scott Barker, an agent with the Federal Bureau of Investigation ("FBI"), for help. Agent Barker agreed to assist Wells, and Wells drafted an application for a search warrant in collaboration with a state prosecutor. Any role Agent

---

[8] Tenn. Code Ann. § 39-13-528, "Solicitation of person under 18 years of age," provides:

It is an offense for a person eighteen (18) years of age or older, by means of oral, written or electronic communication, electronic mail or Internet services, directly or through another, to intentionally command, request, hire, persuade, invite or attempt to induce a person whom the person making the solicitation knows, or should know, is less than eighteen (18) years of age, or solicits a law enforcement officer posing as a minor, and whom the person making the solicitation reasonably believes to be less than eighteen (18) years of age, to engage in conduct that, if completed, would constitute a violation by the soliciting adult of [any of various sexual crimes].

6

Barker may have had in preparing Wells' affidavit in support of the search warrant was not offered as evidence during the hearing.[9]

Initially, Wells testified that he did not recall exactly when he contacted the KPD and the CLPD, but upon cross examination he testified the contacts were closer to April 2, 2008, than to March 5, 2008. Wells later testified that he approached the KPD within "a couple of days" of the arrest. Upon further questioning, Wells stated that he contacted the KPD within a week of Defendant's arrest, contacted the CLPD during the second week, contacted the FBI during the third week, and then applied for the search warrant about a week later.[10]

Significantly, and credibly, Wells testified that he considered the computer itself to be evidence that Defendant intended to engage in sexual activities with a minor as discussed in the computer chats, which included Ginger's offer to allow Defendant to download and view impliedly nude pictures of herself from a disk. While Wells acknowledged that he believed the laptop would also contain child pornography, he testified that he would not have returned the laptop to Defendant even if he had not been able to search its contents or if such a search had revealed no child photography because the computer *itself* was evidence of the solicitation crime.

### B.    Search Warrant and Supporting Affidavit

The search warrant for the computer (and Defendant's GPS device) was issued by a state criminal court judge based on Wells' affidavit [Doc.18-3]. In the "four corners" of the affidavit, Wells described his 19 years of law enforcement experience and stated he had specific training,

---

[9] Also, although present during the hearing, Agent Barker was not called as a witnesses.

[10] While Wells' testimony with respect to the timeline for his contacts with the KPD, CLPD and FBI was confused. However, as explained below, the timeline of these events is not determinative of the conclusions reached herein.

7

duties, and responsibility for the investigation of cyber/computer crimes. Wells described Defendant's laptop computer and GPS unit as the items to be searched and stated they were seized on March 5, 2008, during the course of the investigation, and had remained securely stored in the locked CPD property room since that time. Wells further described the interview during which Defendant admitted he "probably" would have had sex with Ginger upon meeting her.

Wells' affidavit revealed details of the online computer investigation leading to the arrest of Defendant and the seizure of the GPS unit and computer. He also described the sexually explicit computer chats between Defendant, using his laptop, and Ginger. Wells' affidavit states that Defendant "agreed to bring his computer with him for the purpose of viewing photographs of the fourteen-year-old,"[11] and that Defendant "brought his laptop computer with him to the meeting with the female with the intent of viewing pictures of her under the implication she would be naked in those picturers." [*Id.* at 4].

Wells opines, based on his own experience and training and the training and experience of Agent Barker, whose training and experience are not described in the affidavit, that the following facts show that Defendant was predisposed to have child pornography on his computer: (1) Defendant asked Ginger to shave her pubic hair; (2) Defendant solicited sex from a minor; (3) Defendant admitted to viewing pornography involving "barely legal teenaged females on a regular basis;" (4) Defendant brought his laptop computer to the meeting with Ginger with the intent of

_____

[11] During the hearing, Defendant asked Wells whether Defendant ever actually stated he would bring his computer to the rendevous. Wells conceded that Defendant did not, but testified that he inferred from their computer chats that Defendant would bring his laptop. Defendant characterizes Wells' averment as merely an "interpretation" and contends this interpretation is entitled to less reliability than other statements of fact in the affidavit. But Defendant does not contend the affidavit contains any misrepresentations, and during the hearing he expressly disclaimed any intent to challenge the affidavit under *Franks v. Delaware*, 438 U.S. 154 (1978).

viewing pictures of her under the implication she would be naked in the photographs; (5) Defendant requested that he be allowed to take pictures of Ginger and asked "to take pictures and view her whole body naked"; (6) Defendant sent picturers of himself naked to Ginger; and (7) Defendant enjoyed being called "sir" by Ginger and asked to be called "sir" when they engaged in the anticipated sex [*id.*]. Wells opined in his affidavit that Defendant's computer would contain evidence of both solicitation of a minor by electronic means, with which Defendant had already been charged, and possession of child pornography.

Wells also avers that Defendant indicated he would use his GPS device to find Ginger's address. The search warrant was issued upon proof that there was "probable cause to believe that evidence of crimes is on certain electronic equipment," namely, the laptop and GPS device [*id.* at 1]. The warrant authorized Wells to search the computer and GPS for "electronic data, photographs, notes, ledgers, journals, diaries, address books, global positioning coordinates or other geographical information, chat logs, computer peripherals, or data utilized or transmitted, transferred, collected, or stored material involved in unlawful activities." [*Id.*]. The warrant stated that this list was not exclusive.

## III. ANALYSIS

Defendant seeks to suppress all evidence resulting from the seizure, detention, and search of his computer,[12] contending that: (1) the search of his vehicle's trunk was improper under the Fourth Amendment because the officers did not perform a valid vehicle inventory search and lacked

_____

[12] No evidence was presented regarding the evidence recovered during the search of the computer, but Defendant's indictment alleges that Defendant's computer contained "images of child pornography" [Doc. 1].

9

probable cause to search for the computer in the trunk;[13] (2) the seizure and detention of his computer for approximately one month in the property room of the police department before officers obtained a search warrant was unreasonable; and (3) the search warrant was not supported by probable cause to search the computer for child pornography. Each of these arguments is addressed below.

## A.  Search of the Trunk

Generally speaking, warrantless searches are impermissible unless justified by one or more of several "carefully delineated" exceptions. *United States v. Archibald*, 589 F.3d 289, 294 (6th Cir. 2009) (*quoting United States v. United States District Court*, 407 U.S. 297, 318 (1972)).  The Government bears the burden to show an exception applies. *Id.* at 295.  The Government contends that the warrantless search of Defendant's trunk was valid under two such exceptions: as an inventory search or, in the alternative, as a search supported by probable cause.

### 1.  Vehicle Inventory Search

Even without probable cause, officers may "search the vehicle associated with a defendant's lawful arrest for the purpose of taking an impoundment." *United States v. Campbell*, 486 F.3d 949, 958 (6th Cir. 2007) (*citing South Dakota v. Opperman*, 428 U.S. 364, 375 (1976)).  The permissible scope of an inventory search extends to the trunk of the vehicle. *United States v. Jemison*, 310 F. App'x 866, 871 (6th Cir. 2009) (*citing Florida v. Wells*, 495 U.S. 1, 4 (1990)).  An inventory search is proper where three conditions are met.  First, police must have "lawfully taken control of [the] vehicle." *United States v. Smith*, 510 F.3d 641, 651 (6th Cir. 2007) (*citing Wells*, 495 U.S. at 5).

---

[13] Defendant initially argued the search was not proper as an incident of arrest, but that argument is not at issue because the Government has not asserted it.

10

Second, the inventory search must be conducted in accordance with "standardized criteria," or "established routine." *Wells*, 495 U.S. at 4. This second requirement is necessary to ensure that officers have not conducted the vehicle inventory search as a "ruse for a general rummaging in order to discover incriminating evidence." *Id.* But while an inventory may not be conducted as a pretext for an investigatory search, an officer's subjective belief that incriminating evidence will be found "does not invalidate an otherwise proper inventory search." *Smith*, 510 F.3d at 651 (*citing Wells*, 495 U.S. at 5). Finally, the policy authorizing an inventory search must itself be reasonable, and it may not provide officers with "'uncanalized discretion'" in conducting inventories. *United States v. Kimes*, 246 F.3d 800, 805 (6th Cir. 2001) (*quoting Wells*, 495 U.S. at 4). Still, officers may exercise some measure of discretion in light of the purposes of the inventory search--viz., protecting the owner's property, insuring against claims of lost or stolen property, and guarding the police from danger, *see Wells*, 495 U.S. at 4 (allowing "the exercise of judgment based on concerns related to the purposes of an inventory search").

### a.     Defendant's vehicle was lawfully impounded

With respect to the first element, Defendant argues that his vehicle should not have been impounded because Wells "was unable [at the hearing] to reference a reason from the manual for impounding [Defendant's] car." Defendant is correct that the CPD manual does not specify *when* an arrest will require impoundment of the vehicle, but states only that a vehicle may be inventoried *if* it is impounded due to an arrest. The written manual, however, is not the only evidence of CPD policy. Wells testified that CPD officers are taught during field training to impound vehicles whenever the arrestee is not a local resident, and that Defendant's vehicle was impounded pursuant to this policy. *See United States v. Lumpkin*, 159 F.3d 983, 987-88 (6th Cir. 1998) (officer's

11

testimony established standard operating procedure even in absence of written policy). Consistent with Wells' testimony, the vehicle tow-in report shows Defendant's car was towed "due to arrest."

Defendant argues further that "[i]t was unnecessary" to impound his car, and that the officers could have inquired before deciding to impound the vehicle whether someone else, e.g., Defendant's mother, could have retrieved it. Even if true, Defendant's argument fails to establish that the impoundment was contrary to CPD policy. Whether necessary or not, CPD policy provides for impoundment of non-local vehicles without inquiry into someone else's availability to retrieve them.

Alternatively, Defendant's argument may be interpreted as a challenge to the reasonableness of CPD policy itself. Defendant seems to argue that inasmuch as the policy allows officers to use their discretion in deciding whether to impound a vehicle or allow someone else to retrieve it, there is a danger that vehicles will be impounded only to serve the officers' investigatory purposes. CPD policy, however, does not provide for "uncanalized" discretion. Wells testified that the decision to impound Defendant's vehicle was based on his training and experience that out-of-town vehicles are more likely to be broken into than local vehicles, and this purpose is unquestionably "related to the purposes of an inventory search." *See Wells*, 495 U.S. at 4.

I **FIND** the CPD policy governing impoundment of a vehicle when its driver is arrested to be reasonable. Because Defendant's vehicle was impounded pursuant to that policy, I **FIND** his vehicle was lawfully within the custody of the CPD.

### b. The inventory search was conducted according to CPD policy

Wells testified that the search was conducted as an inventory according to the written CPD policy, which allows the inventory search of the entire vehicle, including the trunk, whenever a vehicle is impounded pursuant to an arrest. The policy also specifies how personal property and

12

evidence are to be separately inventoried, procedures that were followed in this case. I **FIND** that the vehicle inventory search in this case was conducted in accordance with CPD policy.

Defendant maintains, however, that the inventory search was a pretext for an improper investigatory search. Defendant's theory is premised on Wells' admission that he expected to find the laptop in the vehicle, along with the very short period of time--just a matter of a few minutes-- between the arrest and the opening of the trunk. Defendant argues, essentially, that the officers' immediate initiation of the vehicle inventory search is proof of their investigatory motive. I reject this argument.

First, Detective Wells' suspicion that he would find evidence in Defendant's car "does not invalidate" a search conducted in accordance with standard policy. *See Smith*, 510 F.3d at 651. Moreover, the prompt inventory search of Defendant's car is entirely consistent with the non-investigatory purposes served by an inventory. CPD policy explicitly requires that an inventory be conducted at the scene of the arrest whenever practical, presumably to protect personal property in the car from being lost or stolen during towing and storage and to protect the CPD against false claims that such items were lost or stolen. Here, the officers were unquestionably entitled to inventory Defendant's car, which was lawfully impounded. There was no need to search the vehicle immediately (as opposed to waiting until after it was towed) except to effectuate these non-investigatory purposes. Furthermore, there were a number of officers on the scene participating in the arrest and inventory search, and to require a delay between an arrest and an inventory search would, in cases like this one, require officers to stand idle while they could be efficiently conducting a lawful inventory search. I therefore **FIND** the vehicle inventory search was not conducted as a pretext for an investigatory search, and I **CONCLUDE** the Government has met its burden to

establish that the search of Defendant's vehicle was proper as an inventory.

### 2. Probable Cause

Even if the inventory search had not been proper, the officers could have searched the car under the vehicle exception to the prohibition against warrantless searches. "If there is probable cause to believe a vehicle contains evidence of criminal activity, [police may] search any area of the vehicle in which the evidence might be found." *Arizona v. Gant*, 129 S.Ct. 1710, 1721 (2009). Probable cause is a "fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Frechette*, 583 F.3d 374, 379 (6th Cir. 2009). Defendant argues that probable cause was lacking to support a search of the trunk. He also argues in the alternative, citing no authority, that if officers did have probable cause to believe he would bring items of evidentiary value, it arose from facts known to them before the planned arrest, and they therefore should have secured a search warrant before the arrest.

To address Defendant's latter argument first, officers with probable cause to search a vehicle are not required to obtain a warrant, even if they have time to do so. *United States v. Hofstatter*, 8 F.3d 316, 322 (6th Cir. 1993). The sole issue, therefore, is whether the facts known to the officers created a fair probability that evidence of a crime would be found in Defendant's car. Both the Government's and Defendant's arguments focus on the laptop: whether there was probable cause to believe it would be in the car, and if so, whether the failure to find it in the passenger compartment justified searching the trunk. The real question, however, is whether it was reasonable for the police to believe that *any* evidence of a crime would be found in *any* area of the vehicle searched. *See Gant*, 129 S.Ct. at 1721.

In this case, the question is not a close one. Wells knew that when planning the rendezvous,

14

Defendant agreed to bring a particular shirt with him and stated he would use his GPS device to find Ginger's address. Ginger also asked whether he would bring his laptop (his only computer), and Wells inferred from their conversation that Defendant would. If there was probable cause to believe that Defendant's vehicle contained even one of these items, any of which would be evidence of Defendant's intent in meeting Ginger,[14] the officers were entitled to search the entire vehicle anywhere the evidence might be found.

I **FIND** that Defendant's presence at the prearranged meeting place was enough to establish a fair probability that evidence would be found in his vehicle under the circumstances at issue. Defendant told Ginger he would use his GPS to find her address and told her that he would bring the shirt she wanted to sleep in. In addition, although Defendant stated he did not know whether he would bring his laptop, there was at least a fair probability that he would bring it. Defendant had expressed a desire to view nude pictures of Ginger, and Ginger offered to have a computer disk of pictures of herself, pictures of such a character that she did not want her mother to find them, available when they met. Because there was probable cause to believe Defendant's vehicle contained evidence of criminal activity, the police could search any area of the vehicle in which the evidence might be found, including the trunk. *See Gant*, 129 S.Ct. at 1721. Accordingly, I **CONCLUDE** the Government has met its burden to establish that the warrantless search of Defendant's vehicle, including the trunk, was properly supported by probable cause.

---

[14] Defendant argues in passing that whether there was probable cause to believe the laptop was in the car is irrelevant because the possession of a laptop, by itself, suggests nothing illegal. While this may be true in the ordinary case, the investigators believed that Defendant's possession of the laptop was corroborative of his intent in meeting Ginger as discussed herein.

**B.      Detention of Laptop Computer Prior to Obtaining Search Warrant**

Defendant argues that the nearly month-long delay in obtaining a search warrant for his seized laptop computer unreasonably interfered with his possessory interest. While seizures without a warrant are presumptively unreasonable, the Government may seize an individual's property without a warrant when there is probable cause to believe that it contains "contraband or evidence of a crime" and failing to seize the container would risk the loss of the evidence or contraband. *United States v. Place*, 462 U.S. 696, 701-02 (1983). In such a case, the Government's interest in seizing the object to preserve the evidence or prevent the illegal use of contraband outweighs the suspect's interest in possessing the object as a matter of law. *Id.* Such a seizure, although permissible when effected, may become unreasonable if extended too long before a search warrant is secured and the search performed. *United States v. Respress*, 9 F.3d 483, 488 (6th Cir. 1993) (holding that a ten-hour delay in securing a warrant was not unreasonable, and noting that longer delays have been approved in other circuits--e.g., a 3-day delay in *United States v. Jodoin*, 672 F.2d 232 (1st Cir. 1982)).

In *Mitchell*, relied on heavily by Defendant, the Eleventh Circuit Court of Appeals held that a 21-day delay in searching a suspect's personal computer was unreasonable because the government provided no "compelling justification" for the delay. 565 F.3d at 1351. The government argued the delay was excusable because the officer with responsibility for analyzing the hard drive was away at training and would not have been able to perform the search until after his return. The court rejected that argument, reasoning that other agents could have drafted the warrant application during his absence. *Id.* The facts of this case are similar: the Government argues the warrant was not prepared because the CPD officers were unable to find assistance to

16

perform the anticipated forensic analysis. Although the Government's rationale might explain a delay in *executing* a search warrant, it does not adequately explain the delay in *applying* for the warrant. The warrant requirement of the Fourth Amendment safeguards an individual's privacy and possessory interests by requiring review by a neutral and detached magistrate. The issuing magistrate may ultimately agree with the officers' assessment that probable cause justifies the detention and search, but this is by no means certain, and absent a persuasive reason, police officers may not unilaterally and indefinitely hold a suspect's property subject only to their own judgment that it is likely to contain evidence.[15]

If the sole justification for the prolonged detention of the laptop before seeking a search warrant in this case was the Government's suspicion that its contents would reveal evidence of a crime, the seizure might well be unreasonable. It is not necessary to reach that question here, however, because this case is distinguishable from *Mitchell* in one crucial respect. In *Mitchell*, if the issuing magistrate had determined that there was no probable cause to search the computer or if the search had revealed no evidence of a crime, the computer would have been returned to the defendant. 565 F.3d at 1352. Here, in contrast, Defendant's laptop would not have been returned

---

[15] It might be argued, as the Government argued in *Mitchell*, that the delay in applying for the warrant was harmless because the search could not have been performed any sooner regardless of when the warrant was issued. Again, this argument assumes that the neutral magistrate will agree with the officers' assessment that there is probable cause to search. If the magistrate disagrees, the property will be returned unless the officers have some other justification for keeping it. Additionally, even if the magistrate ultimately does agree that probable cause supports the search, a requirement that the government timely apply for a search warrant, even if it lacks the capability to perform a prompt search, allows the issuing magistrate to specify, after considering the facts in the affidavit, a reasonable period of time in which the search must be performed. *See* Fed. R. Crim. P. 41(e)(2)(B) and Committee Comments to the 2009 Amendments (Supp. 2009). It is the neutral magistrate who should decide a deadline for the return of the storage media or access to electronically stored information at the time the warrant is issued--not the investigating officers.

because officers were entitled to keep it as evidence of the crime of solicitation of a minor by electronic communication, one element of which is the "intent [to] command, request, hire, persuade, invite or attempt to induce" a minor to engage in a sex act. Tenn. Code Ann. § 39-13-528. Ordinarily, of course, a suspect's possession of a computer will have no evidentiary value apart from its contents. Here, however, Defendant's possession of the laptop at the rendezvous, in light of his conversations with Ginger, corroborated his intent to engage in the activities they had discussed in the online chats, including viewing pictures of Ginger. And as *Mitchell* itself indicates, the Government is under no obligation to return property if it has "some other evidentiary value." *Mitchell*, 565 F.3d at 1352. *See also United States v. Carter*, 139 F.3d 424, 426 (4th Cir. 1998) (en banc).

I **CONCLUDE** that Defendant's argument that the 28-day seizure was unreasonable, which hinges upon a finding that his possessory interest in the laptop was interfered with, fails because Defendant, in effect, lost any possessory interest in the laptop--regardless of its contents--when it was seized as evidence of the crime of solicitation of a minor by electronic means.

### C.    Probable Cause Supporting the Search Warrant

The search warrant for Defendant's laptop authorized a search for evidence of both solicitation of a minor and child pornography.[16] Defendant argues that even if Wells' affidavit establishes probable cause to search for evidence of solicitation,[17] the warrant is overbroad because

---

[16] The warrant authorizes Detective Wells to search for evidence of "crimes" believed to be contained on the laptop and GPS. These "crimes" are described in the affidavit as solicitation of a minor and child pornography.

[17] Wells' affidavit undoubtedly establishes probable cause to believe Defendant's computer would contain evidence of solicitation of a minor. The affidavit states that Defendant used the laptop to communicate with Ginger in chats of a sexual nature, to send Ginger nude pictures of

there was no probable cause to search for evidence of child pornography. Accordingly, Defendant

seeks severance of the portion of the warrant relating to child pornography and suppression of any

evidence of child pornography found during the search.[18]

A magistrate's decision to issue a search warrant is entitled to "great deference," and will

be reversed "only if it was arbitrarily made." *Frechette*, 583 F.3d at 379. In reviewing the

sufficiency of the evidence supporting probable cause, the court is "limited to examining the

information contained in the four corners of the affidavit" in light of "the totality of the

circumstances." *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009). Consequently, a Fourth

Amendment violation will be found only if "the affidavit did not set forth a substantial basis for

finding probable cause." *Frechette*, 583 F.3d at 379. The defendant bears the burden of proof to

show that a search performed pursuant to a warrant was unconstitutional. *United States v.

Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003).

### 1. Probable Cause for Child Pornography

As Defendant points out, the Sixth Circuit Court of Appeals has held that evidence of a

suspect's desire to have sex with a minor is insufficient, by itself, to establish probable cause that

the suspect also possesses child pornography. *United States v. Hodson*, 543 F.3d 286, 293 (6th Cir.

2008). *See also United States v. Crespo-Rios*, 623 F. Supp. 2d 198 (D.P.R. 2009). Defendant argues

---

himself, and to arrange their rendezvous for the stated purpose of engaging in sexual intercourse.
Certainly these facts create a fair probability that evidence of Defendant's solicitation of Ginger
would be found on the laptop.

[18] Defendant argues that the portion of Detective Wells' affidavit relating to child
pornography should be "excised" from the affidavit. When a search warrant is overbroad, the
remedy is not the severance of facts from the *affidavit*, but the severance from the *warrant* of the
places to be searched or things to be seized which are not supported by probable cause. *See, e.g.*,
*United States v. Ford*, 184 F.3d 566, 578 (6th Cir. 1999).

that the search warrant for Defendant's computer was defective because it authorized a search for

child pornography but contained evidence only of the alleged solicitation of a minor. Defendant's

argument based on *Hodson* fails, however, because Wells' affidavit provides much more than the

affidavit at issue in *Hodson*.

In *Hodson*, the affidavit stated facts supporting only the officer's suspicions of child

molestation, with no evidence that the suspect would possess child pornography, and did not

establish a "nexus" between molestation and child pornography. 543 F.3d at 289. The court held

that the issuing magistrate was not equipped to provide the inferential link between the two crimes.

*Id.* at 293-94. *See also Crespo-Rios*, 623 F. Supp. 2d at 199-200, 203-04. In contrast, Wells'

affidavit describes Defendant's admission that he used his laptop to view pornography featuring

teenaged, albeit legal, females and Defendant's interest in viewing nude pictures of Ginger, whom

he believed to be a minor female. It also states that Defendant brought his laptop to the rendezvous

in order to view pictures of Ginger and contains Wells' conclusion, based on his training and

experience and the assistance of Agent Barker that Defendant's solicitation of a minor for sex *along

with his other actions* showed he was predisposed to possess child pornography on his computer.

I **FIND** the facts in Wells' affidavit, taken together, directly supported a belief that

Defendant would possess child pornography on his laptop. I also **FIND** Wells' affidavit established

a nexus between Defendant's conduct and the crime of child pornography, and did not require the

issuing magistrate to supply that inferential link. Unlike the affidavits in *Hodson* and *Crespo-Rios*,

Wells' affidavit sets forth a substantial basis for the issuing magistrate's determination that there was

20

probable cause to believe that evidence of child pornography would be found on the laptop.[19] Giving the issuing magistrate the appropriate deference, I **CONCLUDE** Defendant has failed to meet his burden to show the search warrant for child pornography was unconstitutional.

## 2.     Good Faith Exception

Finally, even if the warrant was not supported by probable cause to search for child pornography, it was nonetheless objectively reasonable for the searching officers to rely on the warrant. The remedy of excluding evidence is designed to deter officers from future violations of the Fourth Amendment, a purpose which is not served when the officers have reasonably relied on a neutral magistrate's determination that there is probable cause. *United States v. Leon*, 468 U.S. 897, 919-21 (1984).[20]

As Defendant points out, in both *Hodson* and *Crespo-Rios*, the warrants, which were not

_____

[19] The Government argues that even if there was no probable cause supporting a search for child pornography, those images would have been found in "plain view" or would have been inevitably discovered during the search of the computer for evidence of child solicitation. Defendant retorts that files related to the solicitation charge would likely be stored in different places on the computer than child pornography images. Neither party, however, presented any evidence to support its position. In fact, there was no evidence presented at the hearing regarding how the computer storage medium was searched, where the alleged child pornography images were stored, or how they were found upon review. Because I conclude there was probable cause to believe the laptop would contain child pornography images, however, I do not reach the issue.

[20] Leon enumerates four situations in which an officer's reliance on a search warrant could not be presumed reasonable:

> (1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and, (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid.

468 U.S. at 914-23. It appears Defendant contends the third and fourth situations are present here. The Sixth Circuit has analyzed the third and fourth situations as a single exception to *Leon's* rule of admissibility. *See Rodriguez-Suazo*, 346 F.3d at 645.

supported by direct evidence that the suspect would possess child pornography or proof of a nexus between child solicitation and child pornography, were held to be so lacking in probable cause that no reasonable officer could have relied on them. 543 F.3d at 293; 623 F. Supp. 2d at 205. That is not the case here. Wells' affidavit was not the sort of "bare bones" document condemned in *Hodson*. *See* 543 F.3d at 291. Instead, as discussed above, Wells' affidavit provided facts directly supporting the presence of child pornography and a nexus between Defendant's conduct and the crime of child pornography. Even if these facts did not create probable cause, they would, at least, bring the warrant within the *Leon* exception to the exclusionary rule. *See United States v. Paull*, 551 F.3d 516, 523 (6th Cir. 2009) (holding that averments based on "officer's experience," even if not sufficient to establish probable cause to search for child pornography, were sufficient to justify reasonable reliance on the warrant). Therefore, even if the search warrant was not supported by probable cause, I would **CONCLUDE** that under the *Leon* good faith exception, suppression of the child pornography images would serve no purpose in deterring officers from future violations.

## IV. CONCLUSION

For the reasons stated above, I **RECOMMEND**[21] that Defendant's motion to suppress [Doc. 17] be **DENIED**.

s/*Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[21] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).